36 So.2d 93

**MINGES et al. v. CITY OF BIRMINGHAM et al.**

**6 Div. 704.**

Supreme Court of Alabama.

June 10, 1948.

Rehearing Denied June 30, 1948.

Jas. W. Aird, Martin, Turner & Mc-Whorter and J. C. Blakey, all of Birmingham, for appellants.

Thos. E. Huey, Jr., of Birmingham, for appellees.

LIVINGSTON, Justice.

Appellants are engaged in the business of bottling, selling and distributing a soft drink known as Pepsi-Cola. They purchase from the Pepsi-Cola Company of New York certain syrup or other ingredients which are used by appellants in their business. In order to stimulate and increase the sale of Pepsi-Cola by appellants and other bottlers and distributors, the Pepsi-Cola Company of New York is now engaged in an extensive advertising campaign

in the form of contests known as "Treasure Top" contests. Appellants are participating in, managing, directing and conducting such contests in Birmingham, Jefferson County, Alabama.

Appellees insist that the "Treasure Top" contests now being conducted are in violation of section 65 of the Alabama Constitution of 1901, and State statutes, as well as ordinances of the City of Birmingham passed in pursuance of said section 65.

This appeal is from a decree of the Circuit Court, in Equity, of Jefferson County, denying to appellants a temporary injunction, restraining and enjoining appellees from arresting appellants or any agent, servant or employee of appellants, who may participate in such contests, and from interfering in any way with appellants in carrying on said contests.

The application for temporary injunction was submitted to the lower court on a sworn bill of complaint, and supporting affidavits. As disclosed by appellants' bill of complaint, and the supporting affidavits, appellants and the Pepsi-Cola Company of New York have heretofore extensively advertised the merits of Pepsi-Cola as a soft drink, and have engaged in extensive advertising campaigns, which have had the effect of stimulating, encouraging and increasing the sale of Pepsi-Cola, all of which has increased appellants' business and inured to appellants' benefit and to the benefit of appellants' business. The bill avers that the "Treasure Top" contests complained of by appellees do not constitute in any respect a lottery or a scheme in the nature of a lottery, and do not in any respect violate any statute of the State of Alabama or any ordinance of the City of Birmingham having to do with lotteries, or any other statute or ordinance; that such contests are in all respects lawful and constitute a legitimate method of advertising, stimulating, encouraging and increasing the sale of Pepsi-Cola by appellants in their legitimate business in the City of Birmingham; that appellees, unless enjoined from so doing, will wrongfully and unlawfully arrest or cause to be arrested appellant L. D. Minges and any agents, servants or employees of appellants who may participate in such contests, and that

appellant L. D. Minges and such agents, servants or employees of appellants will be wrongfully and unlawfully deprived of their liberty, and appellants' business will be irreparably injured and damaged by such acts on the part of appellees.

The "Treasure Top" contests are conducted as follows: Anyone may enter the contest by sending to the Pepsi-Cola contest post office box in New York a statement in twenty-five words or less completing the sentence "Pepsi-Cola hits the spot because * * *". The entry must contain the name and address of the contestant, the name of the head of the contestant's family, and the name and address of the Pepsi-Cola dealer who assisted the contestant. Cash prizes are awarded on the basis of aptness, originality and interest of the statements submitted. All entries are judged by the impartial judging staff of the Rueben H. Donnelly Corporation, an independent, nationally known contest judging organization. Under the cork of every Pepsi-Cola bottle top, which is known as a "Treasure Top," there is imprinted a special design. The first series of designs, of which there are forty-eight, are the insignia of various Army divisions and groups. Each entry in the contest must be accompanied by one of the Pepsi-Cola "Treasure Tops" and a notation of the number of such tops the contestant has collected. There is a treasure top on each bottle of Pepsi-Cola.

The entries are never received nor examined by the Pepsi-Cola Company. They are all taken from the post office box and judged by the Rueben H. Donnelly Corporation. The Reuben H. Donnelly Corporation has established and set up carefully designed objective standards for use by the judges who pass upon the various entries in the contests here involved. There are four different sets of judges, these being the preliminary, the junior, and senior and the executive judges. All the judges are specially trained and qualified for this judging work. Before a winning entry is finally selected, it must be examined and passed upon favorably by the four separate and distinct sets of judges. The entries from each state and the District of Columbia are treated each month

as separate contests, monthly winners being selected from each state and the District of Columbia. There are also national prizes which are awarded to the three best entries from the forty-eight states and the District of Columbia first prize winners in each monthly contest. The monthly national prizes are: first prize $1,000; second prize $500; third prize $250. The monthly prizes in each state are: first prize $100; second prize $50; third prize $25; fourth to tenth prizes, each $10; next forty-one prizes, each $5. The monthly contests extend over a period of six months from January 1, 1948 to June 30, 1948. For each entry submitted a contestant receives one hundred points. Each winner of a monthly national or state prize also receives an additional one hundred points. The one hundred families receiving the largest number of points during the course of the six monthly contests may, at the conclusion of all such monthly contests, participate in what is known as the "Family Sweepstakes Contest". Such one hundred families then submit one statement of fifty words or less on the subject of "How the Sales of Pepsi-Cola Can be Increased." They are assisted by their Pepsi-Cola dealer in preparing such statement, and must submit such dealer's name and address on that entry. The winning entries in the family sweepstakes contest are determined upon the basis of aptness, originality and sincerity of the statements submitted, and the awards are made by the same judges on the same basis in the same manner as are the awards in the monthly contests. The family sweepstakes prizes are: first prize $25,000; second prize $5,000; third prize $2,000; fourth prize $1000; fifth prize $500; and thirty-five prizes, each $100.

The sole question presented is whether the said "Treasure Top" contests constitute lotteries, gift enterprises or schemes in the nature of a lottery.

■ In this State the public policy is emphatically declared against lotteries of any scheme in the nature of a lottery, both by Constitution and by statute. Johnson v. State, 83 Ala. 65, 67, 3 So. 790; Try-Me Bottling Co. et al. v. State, 235 Ala. 207, 178 So. 231–234; In re Opinion of the Justices, 249 Ala. 516, 31 So.2d 753.

■ In Grimes v. State, 235 Ala. 192, 178 So. 73, 74, this Court in defining a lottery said, "Without dispute a lottery has three elements: (1) A prize, (2) awarded by chance, (3) for a consideration".

Clearly the elements of prize and consideration are present here. Try-Me Bottling Co. et al. v. State, supra; Grimes v. State, supra. Are the prizes awarded by chance as that term is used in connection with lotteries, gift enterprises or schemes in the nature of lotteries?

■ The word "chance" is used in different senses. In the sense now considered, Webster's New International Dictionary (second edition) defines "chance" as "something that befalls as the result of unknown or unconsidered forces; a happening in a particular way; the issue of uncertain conditions; a fortuity. An unforeseen or inexplicable cause or its operation; accident; as, to happen by chance." And in 34 Am.Juris. page 649, section 6, it is said: "Chance, as one of the elements of a lottery, has reference to the attempt to attain certain ends, not by skill or any known or fixed rules, but by the happening of a subsequent event, incapable of ascertainment or accomplishment by means of human foresight or ingenuity. * * * Under the English rule, a lottery consists in the distribution of money or other property by chance, and nothing but chance, that is, by doing that which is equivalent to drawing lots. If merit or skill play any part in determining the distribution, there is no lottery. * * * In the United States, however, by what appears to be the weight of authority at the present day, it is not necessary that this element of chance be pure chance, but it may be accompanied by an element of calculation or even of certainty; that is sufficient if chance is the dominant or controlling factor. However, the rule that chance must be the dominant factor is to be taken in the qualitative or causative sense, rather than the quantitative sense."

Appellees contend, first, that the contest rules communicated to the contestants providing simply that statements as to why

Pepsi-Cola hits the spot will be judged on the basis of "aptness, originality and interest" do not establish sufficiently definite standards whereby a contestant may intelligently exercise skill in preparing a statement and that, as to the individual contestant, it is mere chance whether he prepares a statement which will appeal to the taste or the whim of the contest judge or judges who compare his statement with other statements submitted. Secondly, appellees contend that the fact that more definite rules and instructions are given to the contest judges, but are not communicated to the contestants, increases the element of chance to the individual contestant, for, while the contest judges are instructed definitely to consider certain types of statements as being eligible for prizes and to consider certain other types of statements as being ineligible for prizes, the contestants have no knowledge of the standards under which the contest judges are to compare their statements and, consequently, it is pure chance whether an individual contestant will compose a statement that happens not to fall under the interdiction of the secret instructions to the judges. Thirdly, appellees contend that the selection of the one hundred families to participate in the "National Sweepstakes" is, as to the individual contestant, made by chance. The one hundred families are selected solely on the basis of the number of points accumulated by the respective members of such families during the six months contest period, one hundred points being given for each Pepsi-Cola bottle top submitted with a statement, regardless of the merit of the statement.

■ The standards set up for judging the monthly contest statements or compositions, as to why Pepsi-Cola hits the spot, are aptness, originality and interest. This can mean but one thing: the most apt, the most original and the most interesting, statement shall be adjudged the winner. The selections are to be made by the application of definitely known standards promulgated and announced for that purpose. That to prepare such a statement or composition requires the exercise of the judgment, skill, discretion and effort of the contestant, cannot be denied. And if the contests are honestly carried on and the best composition selected according to these known standards, the selections made are not the result of chance.

■ Appellees further contend that the fact that more definite rules and instructions are given to the contest judges, but are not communicated to the contestants, increase the element of chance as to the individual contestants. As we read the record, neither the appellants nor the Pepsi-Cola Company of New York, have given the Donnelly Corporation any instructions whatever, other than to judge the contests on aptness, originality and interest. The record does disclose that the Donnelly Corporation has prepared for its staff of judges certain rules for their guidance. In the first place, we do not think these rules materially conflict with the judging standards governing the contests and known to the contestants. In the second place, if they do conflict, the compositions selected might be the result of fraud or unfair dealing rather than chance, and would not convert into a lottery that which has no resemblance to a lottery. Brooklyn Daily Eagle v. Voorhies, C.C., 181 F. 579; Eastman, et al. v. Armstrong-Byrd Music Co., 8 Cir., 212 F. 662; Hoff Daily Graphic, Inc., 132 Misc. 597, 230 N.Y.S. 360; State v. Lindsay, 110 Vt. 120, 2 A.2d 201.

■ Appellees further insist that the selection of the one hundred families to participate in the "National Sweepstakes" is, as to the individual contestant, made by chance. This method of selection is set out above. These selections, when made, will not be the result of blind fate, which is determined by the drawing of a number, the turning of a card, or the spinning of a wheel. They are made from the sum total of the judgment, skill, discretion and efforts put forth by the contestants in the monthly contests. The fact that some will exert more effort and skill than others makes it a contest of skill, will and effort.

We think that what we have already said in respect to the standards for judging the monthly contests is enough to demonstrate that the standards set up for judging the winners of the family sweepstakes are sufficient under the law, to remove these contests from the odium of lotteries, gift en-

terprises, or schemes in the nature of lotteries. They do not violate section 65 of our Constitution, or statutes and ordinances passed in pursuance thereof.

Reversed and remanded.

GARDNER, C. J., and SIMPSON and STAKELY, JJ., concur.