# Loiseau v. The State.

*Indictment for setting up and operating a Slot Machine.*

1. *Lottery ; what constitutes.*—To constitute a criminal lottery, there must be a consideration, and where small amounts are hazarded to gain large amounts, and the result of winning or losing is determined by chance, in which neither choice nor skill can operate to influence the result, there is gambling by lot ; and the operation of the contrivance or machine used to determine the winning or losing, constitutes a lottery prohibited by the laws of the State.

2. *Same ; same ; slot machines.*—Where a person, who sets up and owns a slot machine, is a party to an agreement between several persons, that each should drop nickels into the machine, and that the one after whose play the machine would indicate the highest card hand should have all of the cigars that the nickels purchased, and the owner of the machine furnished from his stock a cigar for each nickel put into the machine and delivered all of them to the person who obtained the best card hand as the result of playing the machine, said slot machine, when put to such use, is a lottery within the meaning of the constitution, (Const. Art. IV, § 26) ; and the General Assembly has no authority to authorize the licensing of slot machines to be used in such manner. (*Buckalew v. State*, 62 Ala. 334, modified).

3. *Same ; same ; same.*—It is no defense to an indictment for set-

[Loiseau v. The State.]

ting up and operating a slot machine as hereinabove stated, as prohibited by statute, (Acts 1896–97, p. 901), that the owner thereof was licensed thereto by the municipality where the machine was operated, and that, subsequent to the passage of the act prohibiting the operation of such machines, the General Assembly "ratified, approved and confirmed," the schedule of licenses established by such municipality, in which schedule was included licenses for operating slot machines.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

The defendant was indicted, tried and convicted for setting up and operating a slot machine, in violation of the act of the General Assembly, approved February 13, 1897.—Acts 1896–97, p. 901.

The facts of the case are sufficiently stated in the opinion.

J. A. W. SMITH and TILLMAN & CAMPBELL, for appellant.—The act prohibiting the operation of slot machines (Acts 1896–97, p. 901) is unconstitutional in that its caption does not sufficiently show that the act was designed to prohibit slot machines—such machines not being mentioned in the caption, and they not necessarily being games of chance.—*Montgomery v. State*, 88 Ala. 141. The charter of the city of Birmingham granted by act of the General Assembly of Alabama, approved December 12th, 1890, authorized the Mayor and Aldermen of the City of Birmingham "to restrain or prohibit gaming, gambling houses," etc., and "to tax and license all businesses, trades, occupations, exhibitions and professions not above enumerated," and being special legislation for the city of Birmingham was not repealed by the act approved February 13th, 1897. "A general law will not repeal an earlier special act by mere implication."—*Abernathy v. State*, 78 Ala. 411; 23 Am. & Eng. Encyc. of Law, pp. 422–429; Cooley on Const. Limitations, 182–3; Endlich on Interp. of Statutes, sections 210–228; *Regents of University of Michigan v. Auditor General*, 66 N. W. Rep. (Mich.) 959; *Camp v. State*, 27 Ala. 53; *People v. Brinkerhoff*, 68 N. Y. 264; *Gazollo v. McCann*, 63 Mo. App. 414. If the act approved February 13th, 1897, operated a repeal of the city charter, authorizing the Mayor and Aldermen to license slot machines, then by a subsequent act of the General Assembly of Alabama, approved Feb-

ruary 16th, 1897, the license schedule for the city of Birmingham and the ordinances establishing the same were "ratified, approved and confirmed," which operated a suspension of the said act approved February 13th, 1897, within the city of Birmingham, for the year 1897, or until the said ordinances are repealed by the said Mayor and Aldermen.—*Olmstead v. Crook*, 89 Ala. 228; *State v. Clarke*, 54 Mo. 17; *State v. DeBar*, 58 Mo. 395; *St. Johnsbury v. Thompson*, 59 Vt. 300; *In re Snell*, 58 Vt. 207; *Canfield v. City of Leadville*, 43 Pac. Rep. 910; *Deyo v. Otoe County*, 37 Fed. Rep. 246.

WM. C. FITTS, Attorney-General, for the State.

COLEMAN, J.—The indictment against the defendant contains three counts, the first charging that defendant did unlawfully set up, carry on or operate a device of chance, to-wit, a slot machine; the second that he did unlawfully sell chances in a device of chance, to-wit, a slot machine; and the third, that defendant did set up, or was concerned in setting up or carrying on a lottery * * * to-wit, a slot machine.

The defense is rested upon an ordinance of the city of Birmingham, which included in its schedules of licenses slot machines, and an act of the legislature (Acts, 1896-97, p. 1099), which "ratified, approved and confirmed" the schedule of licenses established by the board of Mayor and Aldermen of the City of Birmingham.

Article IV, section 26 of the constitution of the State, reads as follows: "The General Assembly shall have no power to authorize lotteries or gift enterprises for any purpose, and shall pass laws to prohibit the sale of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery in this State: and all acts or parts of acts heretofore passed by the General Assembly of this State, authorizing a lottery or lotteries, and all acts amendatory thereof, or supplemental thereto, are hereby avoided."

The defendant had set up a slot machine in his store, and it and its operation are described as follows: "It is a box shaped arrangement in the top of which was a slot, into which a nickel was dropped; there was a lever on the machine which was pressed down after the nickel was placed in the slot, and when the lever was released,

the machinery in the box or machine caused the cards to revolve on a cylinder, and when the revolution ceased the cards could be read by a bystander. That on the said occasion, three certain parties went into said store, and each of them dropped five nickels in the slot, and pressed the lever after each nickel was dropped in. That the said parties agreed among themselves that the one after whose play the machine would indicate the highest card hand should have all the cigars which the said nickels purchased. That the said defendant had furnished from his stock of cigars a nickel cigar for each nickel which was put into the machine by said three parties, and when it was determined by working the lever, as aforesaid, which one of the three parties had made the highest score, as indicated by the cards on the machine, the defendant delivered to such party cigars to the amount and equal in value to the amount of nickels put into the machine." This is the substance of all the evidence.

That the parties were guilty of gambling, and were within the prohibition of the general law of the State, is not seriously controverted, but it is contended that the slot machine as operated was not a lottery, and that the legislature had authority to license such gambling. We are unable to assent to this conclusion. Calling it by name, a slot machine, instead of a lottery machine, does not vary its character; nor does the fact that parties agreed that the winner should receive the value of the money in cigars, instead of the money itself, exert any influence in determining the character of the winning chance to have been by lot. The three parties agreed between themselves, to which the defendant, the owner and setter up of the machine, was a party, that the highest cards to be determined by the revolving of the wheel should win the value of all the money in cigars to be furnished by the defendant, he taking the money. There have been many definitions of lottery by the decisions of the various courts, each generally made with reference to the particular case then under consideration; and as soon as rendered, the ingenuity of the gambler has gone to work to invent some way to avoid the effect and compass of the precise words used in the particular case. There may be gaming which is not by lot, but in every prohibited lottery there is an element of gambling. The constitutional

provision is, "The General Assembly shall have no power to authorize lotteries." Lot has been correctly defined to be " a contrivance to determine a question by chance, or without the action of man's choice or will." To be a criminal lottery, there must be a consideration, and when small amounts are hazarded to gain large amounts, and the result of winning to be determined by the use of a contrivance of chance, in which neither choice nor skill can exert any effect, it is gambling by lot, or a prohibited lottery. We could cite many cases in which principles have been declared, which if applied to the facts of the present case, would determine it to be a lottery.

We are unable to perceive any difference in principle, in a machine which revolves the wheel laterally, and one where it revolves vertically; in the former, the question of losing or winning being determined by the pointing of an arrow or paddle, and in the latter by the showing of cards. We think the case of *Reeves v. The State*, 105 Ala. 120, is conclusive of the question. See also the following authorities: *Chavannah v. The State*, 49 Ala. 396; *Yellow Stone Kit v. The State*, 88 Ala. 196. Same are reported in 16 Am. St. Rep. 388 and notes, and in 7 Am. St. Rep. 599, with the notes; *State v. Shorts*, 3 (Vroom, 398), 90 Am. Dec. 668; *Cross v. People*. (18 Cal. 321), 36 Am. St. Rep. 292; 13 Am. & Eng. Encyc. of Law, 1178, and notes. The references in the extensive notes in these reports are full and satisfactory.

The legislature has no authority to authorize the licensing of slot machines to be used as the evidence shows it was used in the present case. We would not be understood as deciding that a slot machine is necessarily one of lot, within the prohibition of the law; nor do we hold that a wheel of fortune carries with it the legal import of a lottery. Whether it is so or not depends upon the use to which it is put in the particular case. Whatever may be the name or character of the machine or scheme, if in its use a consideration is paid, and there is gambling, the hazarding of small amounts to win larger, the result of wining or losing to be determined by chance in which neither the will nor skill of man can operate to influence the result, it is a determination by "lot," within the comprehensive word "lottery" used in the constitution of this State. If

[Caulfield *et al.* v. Finnegan.]

there is anything to the contrary to be found in *Bucka-lew v. The State,* 62 Ala. 334, it must be regarded as modified so as to conform to what is herein declared. The case of *Hewlett v. Camp,* (*infra*), is also in point. We will not now undertake to decide the effect of the act of February 13th, 1897, (Acts 1896–97, p. 901), and of February 5th, 1897, in one of which the penalties are increased and in the other diminished, upon the acts of February 16th, 1891, (Acts 1890–91, p. 757), and of February 26th, 1889 (Acts 1888–89, p. 45), as the question is not involved in the case before us.

The indictment evidently was preferred under the act approved February 13th, 1897, (Acts 1896–97, p. 901). The first section reads as follows: "Section 1. *Be it enacted by the General Assembly of Alabama,* that any person who sets up, carries on or operates any wheel of fortune, slot machine or any device of chance, or scheme of raffling, any person who sells tickets or chances in such devices or scheme of raffling, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than ten nor more than fifty dollars."

The evidence in the case authorized a conviction under either the first or second count of the indictment, and we are not prepared to say, that he might not have been properly convicted under the third count.

Affirmed.