We granted the petition for a writ of certiorari filed by Ted's Game Enterprises ("Ted's") to address two issues.[2] The first issue is whether Ala. Const. 1901, Art. IV, § 65, prohibits the Legislature from authorizing or legalizing coin-operated amusement machines as to which "some skill" influences "in whole or in part" the result obtained by the operation of the machines. The second issue is whether Ala. Code 1975, § 13A-12-76, may, without contravening Ala. Const. 1901, Art. IV, § 65, be applied so as to legalize games or activities in which skill does not predominate over chance in determining the outcome. In addressing these issues, this Court must decide whether Art. IV, § 65, which prohibits lotteries, means what it says.
 Discussion I.
Ted's maintains that the plain language of Ala. Const. 1901, Art. IV, § 65, and prior caselaw allow the Legislature to promulgate laws authorizing and regulating gambling devices in which chance predominates over skill in determining the outcome.[3] We disagree.
Article IV, § 65, provides:
 "The legislature shall have no power to authorize lotteries or gift enterprises for any purposes, and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery; and all acts, or parts of acts heretofore passed by the legislature of this state, authorizing a lottery or lotteries, and all acts amendatory thereof, or supplemental thereto, are hereby avoided."
In Opinion of the Justices No. 373, 795 So.2d 630, 634-35
(Ala. 2001), the Chief Justice and three Associate Justices of this Court summarized the historical definitions of the term "lottery" in Alabama law:
 "Since 1980, Alabama has adopted various constitutional amendments creating exceptions to § 65, specifically allowing the game of bingo under certain circumstances. See Ala. Const., Amendments 386, 387, 413, 440, 506, 508, 542, 549, 550, 565, 569, 599, and 612.
 "According to Sir William Blackstone in his Commentaries on the Laws of England, the term `lottery' encompassed a broad array of activities:
 "`[A]ll private lotteries by tickets, cards, or dice . . . are prohibited under a penalty . . . for him that shall erect such lotteries. . . . Public lotteries, unless by authority of parliament, and all manner of ingenious devices, under the denomination of sales or otherwise, which in the end are equivalent *Page 378 
to lotteries, were . . . prohibited. . . .'
 "4 William Blackstone, Commentaries on the Laws of England 173. Nevertheless, Alabama courts did not initially adopt such a broad definition. Buckalew v. State, 62 Ala. 334 (1878) (persons who wagered money on a round board and spun a hand fastened in the center in an attempt to register the highest number on the rim and thereby win money did not violate anti-lottery provisions). However, this narrow view was short-lived, and Alabama courts soon defined lotteries as Blackstone did, interpreting the term `lottery' broadly, thus prohibiting a wide variety of activities. See Reeves v. State, 105 Ala. 120, 17 So. 104 (1894) (persons paying for a privilege to spin an arrow located on a circular board for a chance to win an article of jewelry or a sum of money had engaged in a prohibited lottery); Loiseau v. State, 114 Ala. 34, 36, 22 So. 138, 139 (1897) (Court expressly modified Buckalew and held slot machine to be a lottery); Johnson v. State, 137 Ala. 101, 104, 34 So. 1018, 1019 (1903) (slot machine is a lottery); Try-Me Bottling Co. v. State, 235 Ala. 207, 211, 178 So. 231, 234 (1938) (the prohibition of lotteries applies to any scheme in the nature of a lottery).
 "Despite this broad interpretation, the courts apparently lacked a consistent judicial standard for determining whether a scheme constituted a lottery. . . . Consequently, in 1938, this Court provided the following definition of the term `lottery': `(1) A prize, (2) awarded by chance, (3) for a consideration.' Grimes [v. State,] 235 Ala. [192,] at 193, 178 So. [73,] at 74 [(1938)]. This three-pronged definition of `lottery' was based on definitions of that term used by a vast number of authorities, both judicial and nonjudicial, and it is still accepted by the overwhelming majority of jurisdictions, as well as the United States Supreme Court."
795 So.2d at 634-35 (emphasis added; footnote omitted). Discussing the "English Rule" and the "American Rule" concerning the role of chance in defining a lottery, the advisory opinion continued:
 "Two dominant paradigms thus evolved concerning the role of chance in defining a lottery: the `English Rule' and the `American Rule.' Under the English Rule, only a scheme that exhibits or involves `pure chance' is a lottery. 34 Am.Jur. Lotteries § 6 (1941). As a result, a scheme involving any skill, no matter how de minimis, will not be classified as a lottery. Several Justices mistakenly expressed this view in Opinion of the Justices No. 358 [, 692 So.2d 107 (Ala. 1997)]; however, the prevailing view in the United States is the `American Rule.' Under the American Rule, a scheme is a lottery if chance is the dominant factor in determining the result of the game, even though the result may be affected to some degree by skill or knowledge. 38 C.J. Lotteries § 5 (1925).
 "American courts have consistently rejected the English Rule. Most jurisdictions have embraced the American Rule. Bell Gardens Bicycle Club v. Department of Justice, 36 Cal.App.4th 717, 747, 42 Cal.Rptr.2d 730, 749 (1995) (`In determining whether a particular game or scheme is a lottery, the test in California is whether the game is dominated by chance, not whether the winner of the game is determined solely by chance.'); United States v. Marder, 48 F.3d 564, 569 (1st Cir. 1995) (`for there to be a lottery, chance must predominate over skill in the results of the game'); Citation Bingo, Ltd. v. Otten, 121 N.M. 205, 207 n. 2, 910 P.2d 281, 283
n. 2 (1995) (`"lottery" is defined as "an enterprise" *Page 379 
. . . wherein, for a consideration, the participants are given an opportunity to win a prize, the award of which is determined by chance, even though accompanied by some skill'); Harris v. Missouri Gaming Comm'n, 869 S.W.2d 58, 62 (Mo. 1994) (`a lottery is a form of gambling in which consideration is paid for an opportunity at a prize, where skill is absent or only nominally present'); Lashbrook v. State, 550 N.E.2d 772, 775 (Ind.Ct.App. 1990) (`[c]hance rather than skill must therefore be the dominant factor controlling the award in a lottery'); State v. Dahlk, 111 Wis.2d 287, 296, 330 N.W.2d 611, 617 (1983) (`[c]hance rather than skill must therefore be the dominant factor controlling the award in a lottery'); Roberts v. Communications Inv. Club of Woonsocket, 431 A.2d 1206, 1211 (R.I. 1981) (`a scheme constitutes a lottery when an element of chance dominates the distribution of prizes, even though such a distribution is affected to some degree by the exercise of skill or judgment'); National Football League v. Governor of the State of Delaware, 435 F.Supp. 1372, 1385 (D.Del. 1977) (`"lottery" should be interpreted to encompass not only games of pure chance but also games in which chance is the dominant determining factor'); Seattle Times Co. v. Tielsch, 80 Wash.2d 502, 507, 495 P.2d 1366, 1369 (1972) (`Chance within the lottery statute is one which dominates over skill or judgment.'); Johnson v. Phinney, 218 F.2d 303, 306 (5th Cir. 1955) (`the authorities are in general agreement that if [chance] is present and predominates in the determination of a winner, the fact that players may exercise varying degrees of skill is immaterial; and the game or device is a lottery'); State v. Hudson, 128 W.Va. 655, 665, 37 S.E.2d 553, 558 (1946) (`where . . . chance predominates, even though skill or judgment may enter to some extent in the operation of a particular scheme or device, the scheme or device is a lottery'); Commonwealth v. Lake, 317 Mass. 264, 267, 57 N.E.2d 923, 925 (1944) (`by the weight of authority a game is now considered a lottery if the element of chance predominates'); State ex rel. Dussault v. Kilburn, 111 Mont. 400, 404, 109 P.2d 1113, 1115 (1941) (`whether the element of skill predominated over the element of chance' determined whether game was a lottery); State ex Inf. McKittrick v. Globe-Democrat Pub. Co., 341 Mo. 862, 875, 110 S.W.2d 705, 713 (1937) (`a contest may be a lottery even though skill, judgment, or research enter thereinto in some degree, if chance in a larger degree determine the result'); Hotel Employees Rest. Employees Int'l Union v. Davis, 21 Cal.4th 585, 592, 88 Cal.Rptr.2d 56, 981 P.2d 990, 996 (1999) (`"Chance" means that winning and losing depend on luck and fortune rather than, or at least more than, judgment and skill.'); In re Allen, 59 Cal.2d 5, 6, 27 Cal.Rptr. 168, 377 P.2d 280, 281 (1962) (`The test is not whether the game contains an element of chance or an element of skill but which of them is the dominating factor in determining the result of the game.'); Morrow v. State, 511 P.2d 127, 129 (Alaska 1973) (`We think that a game should be classified as one of skill or chance depending on the dominating element, not on the presence or absence of a small element of skill, which would validate the game under the pure chance doctrine.'); State v. Stroupe, 238 N.C. 34, 37, 76 S.E.2d 313, 316 (1953) (`most courts have reasoned that there are few games, if any, which consist purely of chance or skill, and that therefore a game of chance is one in which the element of chance predominates over the element of skill')." *Page 380 
Opinion of the Justices No. 373, 795 So.2d at 635-36 (footnote omitted).
The advisory opinion then discussed, in light of the historical definitions of the terms "lotteries" and "gift enterprises," the broad limitations placed on the Legislature's power to authorize such schemes:
 "As stated previously, § 65 not only prohibits lotteries, but it also prohibits any `gift enterprise' or `scheme in the nature of a lottery.' `In this State, therefore, the public policy is emphatically declared against lotteries, or any scheme in the nature of a lottery, both by Constitution and by statutes.' (Emphasis added [in Opinion No. 373].) Try-Me Bottling Co.[v. State,] 235 Ala. [207] at 212, 178 So. [231] at 234 [(1938)].
 "`In Try-Me Bottling Co. . . . this court expressly called attention to the broad conception set forth in § 65 showing that the prohibition is not only against lotteries but also against any scheme in the nature of a lottery. The very purpose of this broad declaration was to put a ban on any effort at evasion or subterfuge. Whatever may be the view of the courts of other states on the subject of lotteries, these cases show that this court has adopted a broad view of the meaning of the constitutional provision which does not admit of quibbling or narrow construction.'
 "Opinion [of the Justices] No. 83, 249 Ala. [516] at 518, 31 So.2d [753] at 755 [(1947)]. (Emphasis added [in Opinion No. 373].) Moreover, the fact that it was necessary to amend the Constitution to except `bingo' from § 65's blanket prohibition on lotteries also demonstrates the broad construction that section has been given.
 "In 1981, the Justices of this Court, quoting Yellow-Stone Kit [v. State], 88 Ala. 196, 7 So. 338
[(1889)], stated: `"[T]he courts have shown a general disposition to bring within the term `lottery' every species of gaming, involving a disposition of prizes by lot or chance, . . . which comes within the mischief to be remedied — regarding always the substance and not the semblance of things, so as to prevent evasions of the law. . . ."' Opinion of the Justices No. 277, 397 So.2d 546, 547 (Ala. 1981). (Emphasis added [in Opinion No. 373].) Indeed, the Constitution's broad prohibition on all lotteries is evident because the Constitution explicitly condemns `any scheme' containing elements that would make the scheme resemble a lottery."
Opinion of the Justices No. 373, 795 So.2d at 640.
The advisory opinion then concluded:
 "[W]here the dominant factor in a participant's failure or success in any particular game or scheme is chance, the scheme is a lottery — despite the use of some degree of judgment or skill. Therefore, in Alabama the American Rule controls, and even if skill is present, it is the question whether chance dominates that determines whether a lottery exists."
Opinion of the Justices No. 373, 795 So.2d at 641.
Accordingly, we hold that Article IV, § 65, means what it says, and prohibits the Legislature from authorizing "lotteries or gift enterprises" that involve games or devices in which chance predominates the outcome of the game, even if "some skill" is involved.
 II.
Ted's maintains that coin-operated amusement machines are protected from the criminal gambling statutes of Ala. Code 1975, §§ 13A-12-20 through 13A-12-75, *Page 381 
by Ala. Code 1975, § 13A-12-76, commonly referred to as the "Chuck E. Cheese Law." Specifically, Ted's argues that § 13A-12-76
exempts certain "bona fide coin-operated amusement machines" from the criminal gambling statutes. The phrase "bona fide coin-operated amusement machines" is defined, in part, as "every machine of any kind or character used by the public to provide amusement or entertainment . . . the result of whose operation depends in whole or in part upon the skill of theplayer. . . ." (emphasis added). Thus, Ted's argues that as long as coin-operated amusement machines involve "some skill" in their operation, they meet this qualification under § 13A-12-76.
As noted above, Art. IV, § 65, forbids the Legislature from enacting a statute authorizing a lottery. Thus, we hold that §13A-12-76 may not, without contravening Art. IV, § 65, of the Alabama Constitution, be applied so as to legalize games or activities in which skill does not predominate over chance in determining the outcome.
 Conclusion
The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
HOUSTON, SEE, LYONS, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., dissents.
[2] For a detailed discussion of the facts and procedural history of this case, see State ex rel. Tyson v. Ted's GameEnterprises, 893 So.2d 355 (Ala.Civ.App. 2002).
[3] Ted's refers to such games as "some skill" games, as opposed to those games in which skill predominates over chance in determining the outcome.