THOMPSON, Judge'
This is an appeal from a judgment ordering that certain property be forfeited pursuant to § 13A-12-30, Ala.Code 1975.
On May 3, 2001, investigators with the Mobile County District Attorney’s Office (“the DA’s office”) executed search warrants on the Game Room/Lucky 7 and the Mardi Gras Arcade (hereinafter together referred to as “the gaming establishments”). While executing the two search warrants, the investigators seized, in addition to “assorted gift cards” and “gift certificates,” a total of 127 gaming machines and $11,340.43 in United States currency.
On June 7, 2001, the State of Alabama filed two separate complaints seeking the forfeiture, pursuant to §. 13A-12-30, of the property and currency seized by the investigators for the DA’s office. Kevin Sharp Enterprises, Inc. (“KSE”), answered in each case and asserted a claim of ownership of the gaming machines and the currency; according to the affidavit of Kevin Sharp, the president of KSE, KSE “supplied” the gaming machines to the two gaming establishments from which those machines were seized. In its answer, KSE also denied that the machines at issue were illegal gaming devices. ■ The two actions were consolidated in the trial court.
■Both KSE and the State filed motions for a summary, judgment. .On September 1, 2004, the trial court entered an order in which it, among other things, granted the State’s motion for a summary judgment, denied KSE’s motion for a summary judgment, and ordered that the gaming devices and a total of $2,841 in currency be forfeited.[1] - KSE timely appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
A brief statement of the relevant facts is all that is necessary for the disposition of this appeal. The record indicates that the search warrants executed by the investigators for the DA’s office were based on two virtually identical affidavits executed by Dale Leddick, an investigator for the DA’s office. In those affidavits, Leddick stated that he had been advised by an “officer” and a confidential source that gaming machines were present on the premises of the two gaming establishments and that those machines were used in a capacity that constituted illegal gambling.
According ■ to the record, criminal charges in connection with the execution of the search warrants were filed against John Kelly, the operator of the Mardi Gras Arcade. In that criminal proceeding, Kelly moved to suppress the evidence seized as a result of the execution of the search warrant on the Mardi Gras Arcade. In his motion to suppress, Kelly argued that the search warrant was issued without probable cause and that the affidavit upon which the search warrant was obtained was based on hearsay. The court hearing the criminal matter against Kelly granted Kelly’s motion to suppress. . In a supplement *1120 to its motion for a summary judgment, KSE, citing the criminal case against Kelly, asserted that the search warrants were due to be suppressed in this civil-forfeiture action.
During the time this matter was pending in the trial court, this court issued its opinion in State ex rel. Tyson v. Ted’s Game Enterprises, 893 So.2d 355 (Ala.Civ.App.2002), and our supreme court affirmed this court’s judgment in Ex parte Ted’s Game Enterprises, 893 So.2d 376 (Ala.2004). In those cases, the courts concluded that § 13A-12-76, Ala.Code 1975, which exempts from the State’s criminal gambling statutes any machines that require “some skill,” could not be applied to legalize gaming machines such as the ones at issue in this matter.
Before the trial court, KSE essentially conceded that its gaming machines were similar to those addressed in Ex parte Ted’s Game Enterprises, supra, and, therefore, that those machines violated the criminal gambling statutes. However, in its summary-judgment motion before the trial court, KSE argued that Ex parte Ted’s Game Enterprises, supra, constituted an ex post facto change in the law that deprived KSE of its due-process rights to “fair warning” that its gaming machines might violate the criminal gambling statutes.
On appeal, KSE first argues that the trial court erred in refusing to “suppress” the gaming machines seized in the May 3, 2001, searches of the gaming establishments because, it contends, those machines were seized based on invalid search warrants. The State argues before this court, as it did before the trial court, that KSE has no standing to object to the search warrants because KSE does not own or operate either establishment from which the gaming machines were seized; therefore, the State argues, KSE had no expectation of privacy in either establishment.
“ ‘When a motion to suppress evidence in a criminal case is based on the ground that the evidence was obtained in violation of the Fourth Amendment, one issue is whether the movant has standing to assert the claim and to seek the remedy of exclusion. See LaFave, 4 Search and Seizure § 11.3 (2d ed.1987). The rights afforded protection by the Fourth Amendment are personal rights. See Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968). To show that a party has standing to object to a search, the party must have a possessory interest in the premises searched. Rakas v. Illinois, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978).... The “ ‘capacity ,to claim the protection of the [Fourth] Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion.’ ” Mancusi v. DeForte, 392 U.S. 364, 368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968), quoting Katz v. United States, 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). “A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person’s premises or property has not had any of his Fourth Amendment rights infringed.” Rakas, 439 U.S. at 134, 99 S.Ct. at 425.’
“Williams v. State, 601 So.2d 1062, 1070 (Ala.Crim.App.1991).”
Draper v. State, 641 So.2d 1283, 1285 (Ala.Crim.App.1993) (holding that the appellant *1121 had no standing to challenge a search of the apartment of an acquaintance).
This court has applied the same principles regarding standing discussed in Draper, supra, a criminal case, in a civil-forfeiture case. In Johnson v. State, 667 So.2d 105 (Ala.Civ.App.1995), the State sought to condemn certain currency it had seized during a search of a vehicle, and Johnson claimed ownership of that currency. Johnson claimed that the vehicle from which the currency was seized was registered in her name, but she produced no documentation to support her claim. The evidence indicated that the vehicle was registered in someone else’s name. The trial court ordered that the currency be forfeited to the State. This court affirmed, concluding that the evidence supported a conclusion that Johnson had not demonstrated any ownership or possessory interest in the vehicle. In so holding, this court noted that the burden was on Johnson to “establish her standing to challenge the search of the vehicle.” Johnson v. State, 667 So.2d at 107.
In this case, KSE has asserted only a claim of ownership of the gaming machines and of the currency that was seized on May 3, 2001. KSE has not asserted, much less presented any evidence indicating, that it had any ownership interest or pos-sessory interest in either of the gaming establishments from which the property and currency was seized. KSE has not explained how it might claim a reasonable expectation of privacy in the gaming establishments that would give it standing to challenge the May 3, 2001, search of those establishments. See Johnson v. State, supra; and Draper v. State, supra. Therefore, we must agree with the State’s contention that KSE has failed to meet its burden of demonstrating that it has standing to challenge the search of the gaming establishments. See Johnson v. State, supra.
KSE next argues that the summary judgment was improper because, KSE contends, it was based on an impermissible ex post facto change in the law. In this case, we are not concerned with a true ex post facto law, because no legislative act has changed the criminal gambling statutes since the May 3, 2001, seizure of the gaming machines. Rather, KSE argues .that our supreme court’s opinion in Ex parte Ted’s Game Enterprises, supra, constitutes an impermissible ex post facto “change” in the law. The United States Supreme Court has held that the prohibition against ex post facto legislative enactments also applies to judicial decisions:
“[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the [United States] Constitution forbids. An ex post facto law has been defined by this Court as one ‘that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action,’, or ‘that aggravates a crime or makes it greater than it was, when committed.’ Calder v. Bull, 3 Dall. 386, 390. If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.”
Bouie v. City of Columbia, 378 U.S. 347, 353-54, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (footnote omitted). See also Marks v. Untied States, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (“The Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government. But the principle on *1122 which the Clause is based — the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties — is fundamental to our concept of constitutional liberty.” (citations omitted)).
The prohibition against the enactment of ex post facto laws applies to penal or criminal matters rather than to civil actions. Adams v. State, 428 So.2d 117, 119 (Ala.Civ.App.1983); Ward v. State, 42 Ala.App. 529, 531, 170 So.2d 500, 501-02 (1964); see also United States v. D.K.G. Appaloosas, Inc., 829 F.2d 532, 540-46 (5th Cir.1987) (discussing the applicability of the Ex Post Facto Clause of the United States Constitution to 21 U.S.C. § 881, which provides for the forfeiture of property used in violation of controlled-substances laws, and concluding that because § 881 was primarily a civil-forfeiture provision, the Ex Post Facto Clause did not apply to it). In making its argument on this issue, KSE concedes that the forfeiture pursuant to § 13A-12-20 is civil in nature. However, KSE predicates its “ex post facto” argument on ex post facto principles, which are based on due-process protections.
In Brooks v. Alabama State Bar, 574 So.2d 33 (Ala.1990), our supreme court relied on ex post facto principles in addressing a civil matter: the Alabama State Bar’s imposition of disciplinary sanctions against a district attorney. In Brooks, supra, the supreme court reversed the order of discipline against the district attorney, concluding that due process prohibited the imposition of the disciplinary sanction because the district attorney did not have reason to believe that the conduct for which she was disciplined was governed by the Code of Professional Responsibility. In reaching its holding, our supreme court explained the relationship between ex post facto principles and due process as follows:
“Due process of law requires fair notice that one’s conduct is subject to a law or regulation.
“ ‘The ex post facto principle applies to any activity in which a person engages with a reason to believe that it does not give rise to a particular penalty. This additional protection comes not from the ex post facto constitutional prohibition itself but from the “due process” clause of the Fifth amendment, which incorporates the same concept for judicial interpretations and holds that they rise to the level of a guaranty. Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).’
“United States v. Hayes, 703 F.Supp. 1493, 1502 (N.D.Ala.1989). Cf. Ala. Const.1901, art. I, §§ 6, 7, and 13.
“ ‘The right to due process is guaranteed to the citizens of Alabama under the Alabama Constitution of 1901, Article 1, Sections 6 and 13. This constitutional right to due process applies in civil actions as well as criminal proceedings. Pike v. Southern Bell Telephone and Telegraph Co., 263 Ala. 59, 81 So.2d 254 (1955). The courts have found that this right is violated when a statute or regulation is unduly vague, unreasonable, or overbroad.’
“Ross Neely Express, Inc. v. Alabama Dep’t of Environmental Mgt., 437 So.2d 82, 84 (Ala.1983).”
Brooks v. Alabama State Bar, 574 So.2d at 34.
In 1996, the State legislature enacted § 13A-12-76, Ala.Code 1975, which provides an exception to the criminal gambling statutes for bona fide amusement machines that require the application of “some skill” in determining the outcome of *1123 the game.[2] In Ex parte Ted’s Game Enterprises, supra, gaming machines similar to the ones seized in this case were at issue. In that case, Ted’s argued that § 13A-12-76 exempted its machines from the criminal gambling statutes because, it maintained, its machines required some level of skill, albeit slight. Our supreme court addressed whether § 13A-12-76 violated Art. IV, § 65, Ala. Const.1901, which prohibits Alabama’s legislature from enacting a statute authorizing a lottery. The supreme court held that § 13A-12-76 may not “be applied so as to legalize games or activities in which skill does not predominate over chance in determining the outcome.” Ex parte Ted’s Game Enters., 893 So.2d at 381 (emphasis added).
KSE argues that summary judgment was improper because its due-process rights to fair warning were violated. Specifically, KSE argues that on May 3, 2001 — the date on which the gaming machines were seized — it did not have “fair warning” that the gaming machines would later, through the issuance of the opinion in Ex parte Ted’s Game Enterprises, supra, be determined to violate the criminal gambling statutes, and, therefore, that those machines would be subject to civil forfeiture. In making that argument, KSE contends that it relied on two circuit court judgments — the one that was reviewed in Ex parte Ted’s Gaming Enterprises, supra, and another circuit court judgment[3] — in ascertaining and attempting to ensure that its gaming machines did not violate the criminal gambling statutes. KSE maintains that it “modified” its gaming machines in order to comply with those two circuit court judgments.
"(a) Sections 13A-12-70 to 13A-12-75, inclusive, shall not apply to a coin-operated game or device designed and manufactured for bona fide amusement purposes which, by application of some skill, only entitles the player to replay the game or device at no additional cost ..., or rewards the player exclusively with merchandise limited to noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than five dollars ($5).”
First, one of those two circuit court judgments was being reviewed in the appellate courts on appeal at the time the gaming machines in this case were seized, and the other judgment had been affirmed without an opinion, accompanied by a special writing indicating that the appeal had not addressed the constitutionality of the gaming machines at issue. Also, although KSE also referred to those two circuit court judgments in its summary-judgment motion, copies of those judgments are not contained in the record on appeal, and no motion has been filed asking this court to incorporate the record from the two appeals from those judgments. The State, however, in support of its opposition to KSE’s motion for a summary judgment, submitted orders from other courts in which those courts found gaming machines such as the ones supplied to the gaming *1124 establishments by KSE to be illegal.[4] Although none of those judgments or orders are binding precedential authority, .they indicate that there has been some conflict in the way courts in this State have treated gaming machines such as those owned by KSE. KSE does not explain why it relied on only the two circuit court judgments to which it cites but did not consider any of the other judgments or orders that reached a result different from that reached in those two judgments, nor does it make any attempt to explain why the disparity of the treatment of machines similar to those to which it claimed ownership in the lower courts did not serve to provide it “fair warning” of the possibility that its machines might be deemed to violate the State’s criminal gambling statutes.
Also, before the May 3, 2001, seizure of KSE’s gaming machines, four Justices of our supreme court issued an advisory opinion that indicated gaming machines such as those at issue in this case violated the criminal gambling statutes. See Opinion of the Justices No. 373, 795 So.2d 630 (Ala.2001).[5] The court released Opinion of the Justices No. 373 on April 24, 2001— before the May 3, 2001, search of the two gaming establishments that led to the seizure of the gaming machines currently at issue. In Opinion of the Justices No. 373, supra, four Justices on the supreme court rejected the argument that because some level of skill, however slight, might be employed in using the gaming machines, those machines did not violate the criminal gambling statutes.[6] In reaching its conclusion, the plurality opinion stated:
“The better definition is that where the dominant factor in a participant’s failure or success in any particular game or scheme is chance, the scheme is a lottery — despite the use of some degree of judgment or skill. Therefore, in Alabama the American. Rule controls, and even if skill is present, it is the question whether chance dominates that determines whether a lottery exists. It is for the courts to determine, on a case-by-case basis, whether skill or chance dominates in an activity and, therefore, whether the activity is in the nature of a lottery.”
Opinion of the Justices No. 373, 795 So.2d at 641. The plurality opinion later concluded:
“Most American courts, and indeed the courts of Alabama, have long recognized *1125 the ‘American Rule,’ which labels as a lottery an activity in which a prize is awarded by chance and for consideration, when chance is the dominant element, even when a degree of skill may affect the outcome. We unequivocally reject the ‘English Rule,’ which would permit any activity where a prize is awarded by chance for a consideration, and in which some degree of skill is present, to escape the anti-lottery provision of § 65 of the Alabama Constitution.”
Opinion of the Justices No. 373, 795 So.2d at 643. In reaching its holding in Ex parte Ted’s Game Enterprises, supra, our supreme court relied on and quoted extensively from the plurality opinion in Opinion of the Justices No. 373, supra.
In their briefs on appeal, the parties cite to and base their arguments on a number of cases that have previously addressed issues pertaining to the legality or constitutionality of lotteries or gaming in Alabama. See, e.g., Opinion of the Justices No. 358, 692 So.2d 107 (Ala.1997); Opinion of the Justices No. 205, 287 Ala. 334, 251 So.2d 751 (1971); Minges v. City of Birmingham, 251 Ala. 65, 36 So.2d 93 (1948); Opinion of the Justices No. 83, 249 Ala. 516, 31 So.2d 753 (1947); and Loiseau v. State, 114 Ala. 34, 22 So. 138 (1897). We do not think that a detailed analysis of those cases would serve any useful purpose. The plurality opinion in Opinion of the Justices No. 373, supra, thoroughly analyzed those cases, and it did so before the gaming machines at issue in this matter were seized; the analysis in that opinion was later adopted by a majority of the Supreme Court of Alabama in Ex parte Ted’s Game Enterprises, supra. Given the foregoing, especially the timing of the release of Opinion of the Justices No. 373, supra, we reject KSE’s argument that it did not have “fair warning” that its gaming machines might violate Alabama’s criminal gambling statutes and, therefore, that those machines would be subject to forfeiture pursuant to § 13A-12-20, Ala.Code 1975.
KSE has failed to demonstrate that the trial court erred in reaching its judgment; therefore, we affirm.
AFFIRMED.
CRAWLEY, P.J., and PITTMAN, MURDOCK, and BRYAN, JJ., concur.

. Also in that judgment, the trial court noted that the interest in the property and currency claimed by John Kelly, the operator of the Mardi Gras Arcade,, had already been adjudicated and that Clifton Sons, the operator of the Game Room/Lucky 7, had disclaimed any interest in the property and currency seized.

. The precise language of the pertinent portion of § 13A-12-76, Ala.Code 1975, provides:

. KSE cites the circuit court judgment in State v. Pay & Ann's Place (CV-98-325, Montgomery Cir. Ct., Jan. 11, 1999), which was affirmed without an opinion by this court. See State v. Ray and Ann’s Place, 765 So.2d 19 (Ala.Civ.App.2000). We note that Judge Monroe's special concurrence in that case indicates that the trial court ordered that only one of three seized machines be forfeited as viola-tive of the State's criminal gambling statutes. That writing further specifies that in affirming the trial court's judgment in that case, this court did not decide the issue whether those machines constituted illegal gambling devices, but, rather, that the court concluded that the State had failed to meet its burden in demonstrating that the machines should be forfeited.

. Those orders included a November 11, 1999, denial of a motion to dismiss in Pickard v. Funliner of Alabama, LLC, et al. (CV-99-01092, Jefferson Cir. Ct., Bessemer Div.); a May 31, 2000, denial of a motion to dismiss in State v. Anderson (DC1999-3718, Jefferson Dist. Ct., Bessemer Div.); a May 31, 2000, denial of a motion to dismiss in State v. Winfield (DC1999-3709, Jefferson Dist. Ct., Bessemer Div.); and a June 2000 denial of a motion to dismiss in State v. Thompson (DC1999-12033, Jefferson Dist. Ct.).

. We recognize that advisory opinions are not binding precedent, see Opinion of the Justices No. 370, 756 So.2d 21, 23 n. 1 (Ala.1999), and Opinion of the Justices No. 289, 410 So.2d 388, 392 (Ala.1982), and that only four Justices addressed the gambling/lottery issue in Opinion of the Justices No. 373. However, the thorough analysis set forth in Opinion of the Justices No. 373 must be deemed to be more persuasive authority than the orders or judgments relied on by KSE in this appeal.

.The question posed of the Justices in Opinion of the Justices No. 373, supra, concerned whether a Senate bill that would authorize a certain type of gambling constituted a revenue-raising bill that should originate in the House of Representatives. The Chief Justice and three Associate Justices declared the bill to be unconstitutional, thereby concluding that it could not properly originate in either house. Three other Associate Justices determined that the bill was not a revenue-raising measure because it implicated the exercise of the State's police powers. Two Associate Justices declined to answer the question.