WOODALL, Justice
(dissenting).
In recent years, Alabama appellate courts have exercised jurisdiction in cases distinguishable in no material respect from this case. In those cases, not a single *593 Judge or Justice has questioned the subject-matter jurisdiction of the trial court. The Court’s departure today from that practice is, in my opinion, unnecessary and, under the facts of this case, unfair to Macon County Greyhound Park, Inc., d/b/a VictoryLand (“VictoryLand”), whose duly licensed bingo operation is at risk of irreparable harm because of a difference of opinion between the Macon County law-enforcement officials and the commander of Governor Riley’s Task Force on Illegal Gambling, John M. Tyson, Jr. Therefore, I respectfully dissent.
The majority does not discuss State ex rel. Tyson v. Ted’s Game Enterprises, 893 So.2d 355 (Ala.Civ.App.2002), aff'd, Ex parte Ted’s Game Enterprises, 893 So.2d 376 (Ala.2004). In that case, it was Tyson, then acting as district attorney of Mobile County, who invoked the civil jurisdiction of the Mobile Circuit Court by seeking “a judgment declaring that ... machines owned and distributed by Ted’s [were] illegal ‘slot machines’ and ‘gambling devices’ under Alabama’s criminal gambling statutes.” Tyson, 893 So.2d at 358. In its opinion, which rendered a judgment in favor of the State, the Court of Civil Appeals held that “the State’s right to seek a declaratory judgment with respect to [such] matters” was “particularly appropriate” given “the invasive power the State wields when it seeks to enforce statutory provisions against its citizens.” Tyson, 893 So.2d at 362. In so holding, the court was well aware that “[t]he trial court’s entry of a judgment adverse to the State [would], if not reversed ..., have an adverse impact on how the State enforces the criminal gambling statutes as to other machines.” Tyson, 893 So.2d at 362 n. 5.1 am aware of no authority that would allow one party to a dispute to seek a resolution of that dispute through a declaratory-judgment action, while denying that same right to the other party to the dispute. In other words, if Tyson had that right, so does VictoryLand.
This Court’s decision in Barber v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599 (Ala.2006), is consistent with this Court’s affirmance of the Court of Civil Appeals’ judgment in Tyson. One of the parties in that case was David Barber, who was then acting as district attorney for the Tenth Judicial Circuit of Aabama and who preceded Tyson as the commander of the Governor’s task force. In pertinent part, the issue in Barber was whether devices being operated at the Birmingham Race Course “involve[d] the use of slot machines.” 960 So.2d at 603. In the trial court, the race-track operator “sought a judgment ... declaring that its [Quincy’s] MegaSweeps operation was lawful and ... enjoining [the sheriff] from interfering with its MegaSweeps operation.” 960 So.2d at 602. Barber intervened in that civil action and filed a counterclaim for declaratory and injunctive relief, taking the position that the MegaSweeps operation involved illegal gambling devices and should be permanently enjoined. The trial court entered a judgment declaring that the MegaSweeps operation was legal and enjoining the sheriff from interfering with it. Barber then appealed to this Court, which, in a unanimous decision, reversed the judgment of the trial court and rendered a judgment in favor of Barber. No party and no member of this Court questioned the subject-matter jurisdiction of the trial court or the jurisdiction of this Court to address the legality of the devices in question.
Barber, acting in his capacity as the commander of the Governor’s task force, later obtained relief from this Court in Barber v. Cornerstone Community Outreach, Inc., 42 So.3d 65 (Ala.2009). This Court denied rehearing in that case on the same day that Tyson filed his emergency *594 motion to stay in this case claiming that the trial court had no subject-matter jurisdiction. Cornerstone arose from a declaratory-judgment action filed by the operator of a bingo-gaming facility, seeking, “among other things, a declaratory judgment and preliminary and permanent injunctive relief regarding the seizure of the electronic gaming machines by the Task Force.” 42 So.3d at 69. The trial court entered a preliminary injunction ordering the return of the property that had been seized and enjoining any further interference with the bingo operation during the pendency of the action. Barber, Governor Riley, and other members of the task force appealed, and this Court reversed the order entering the preliminary injunction and remanded the case for further proceedings. If this Court had determined that the trial court lacked subject-matter jurisdiction, it would have vacated its order, dismissed the case, and dismissed the appeal. No party and no member of this Court questioned the subject-matter jurisdiction of the trial court to address the legality of the machines in question. Indeed, this Court relied on its decision in Cornerstone to reach its unanimous decision in Surles v. City of Ashville, [Ms. 1080826, January 29, 2010]-So.3d - (Ala.2010). In Surles, this Court ruled in favor of the sheriff of St. Clair County, holding that an ordinance adopted by the City of Asheville “provides for the operation of games that extend beyond the permissible definition of bingo,” — So.3d at-, as defined in Cornerstone.
In this case, VictoryLand seeks, in pertinent part, preliminary injunctive relief preventing the task force from interfering with the bingo gaming it operates pursuant to licenses issued by the sheriff of Macon County pending a judgment declaring whether its machines meet the definition of bingo adopted in Cornerstone and applied in Surles. This is the same type of relief sought by the plaintiffs in both Barber and Cornerstone. In other words, Vic-toryLand, faced with a disagreement between the Macon County law-enforcement officials and the task force as to the legality of VictoryLand’s operation, merely seeks to preserve the status quo until the Macon Circuit Court resolves the issue. In my opinion, allowing it to do so is consistent with the authorities I have cited and is the only means of resolving this dispute in a manner that is fair to all concerned.
The purpose of the Declaratory Judgment Act “is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations and [it] is to be liberally construed and administered.” § 6-6-221, Ala. Code 1975. The State has sought a declaratory judgment where the entry of a judgment adverse to it could “have an adverse impact on how the State enforces the criminal gambling statutes.” Tyson, 893 So.2d at 362 n. 5. The “Declaratory Judgment Act was designed to supply the needs of a form of action that will set controversies at rest before they lead to repudiation of obligations, the invasion of rights, and the commissions of wrongs.” Thompson v. Chilton County, 236 Ala. 142, 144, 181 So. 701, 703 (1938)(emphasis added). Victory-Land is certainly faced with “uncertainty and insecurity” regarding the legal status of its bingo operation, and the task force’s seizure of its machines could possibly amount to an “invasion of [its] rights.”
It is true that “[i]njunctive relief ... will not be granted ‘merely to allay an apprehension of possible injury; the injury must be imminent and irreparable in an action at law.’ Carson v. City of Prichard, 709 So.2d 1199, 1207 (Ala.1998).” Ex parte Alabama Dep’t of Mental Health, 837 So.2d 808, 811 (Ala.2002). As revealed by the task force’s attempted raid and by Tyson’s stated intent to return to the *595 premises for the purpose of seizing the machines, it is clear that an injury is “imminent.”
VictoryLand alleges in its verified complaint that an unlawful seizure of its machines would cause it irreparable injury. I agree. Although its property would have to be returned, see Rule 3.13(a), Ala. R.Crim. P., any such seizure would undoubtedly cause a loss of revenue, goodwill, and business reputation, losses that VictoryLand could not recover from the sovereignly immune State.
Today’s decision easts a cloud upon this Court’s prior decisions, as well as numerous trial court judgments addressing the legality of various bingo operations. What has been an orderly process, I suspect, will soon resemble a three-ring circus.
COBB, C.J., concurs.